UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JUL 13 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-319-GWU

ANGELA NAPIER,                      PLAINTIFF,

VS:           MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,       DEFENDANT,

## INTRODUCTION

Angela Napier originally brought Caudill v. Apfel,[1] London Civ. A. No. 98-22 (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of October 16, 1998 (Tr. 246-254), it is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is

---

[1]The plaintiff changed her last name following the remand.

1

not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of

gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can

3

perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more

than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Napier, a 34 year-old former assembler, baby-sitter and motel maid with a "limited" education, suffered from impairments related to low back pain, a history of a tubal pregnancy, dysthymia, a panic disorder, an anxiety disorder and borderline intelligence. (Tr. 221, 224). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 229). Since the claimant was found able to return to her past work as an assembler and baby-sitter, she could not be considered totally disabled. (Tr. 229).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the

plaintiff.

In determining that Napier could return to her past relevant assembly and baby-sitting work, the ALJ relied heavily upon the testimony of Vocational Expert William Ellis. The hypothetical question presented by the ALJ included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to more than occasionally stoop from the waist to the floor; (2) a need for a sit/stand option in one-hour intervals; (3) a need to avoid exposure to environmental pollutants such as dust, fumes, smoke, chemicals, and noxious gases; (4) a "limited but satisfactory" ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, function independently, and maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability; (5) a "seriously limited but not precluded" ability to use judgment, deal with work stresses, understand, and remember and carry out detailed instructions; (6) a limitation to low stress work with minimal public contact and no more than simple one-two-step instructions; and (7) a limitation to jobs commensurate with borderline intelligence. (Tr. 390). In response, the witness indicated that such a person could still perform Napier's past work as an assembler and baby-sitter. (Tr. 391). Ellis also identified a significant number of other jobs which could be done. (Tr. 391). Therefore, assuming that the vocational factors considered by Ellis fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

This action was previously remanded by the Court because the ALJ erred in evaluating Napier's mental condition. (Tr. 254). The mental restrictions identified by Psychologist Reb Moore, an examining consultant, were rejected by

6

the ALJ but not properly offset in the record by those of another source. (Tr. 254-255). Upon remand, this error was corrected.

Following the remand of this action, Napier was examined by psychologist Gary Maryman. Maryman indicated that the plaintiff would have a "poor" ability to deal with the public, to understand and remember and carry out detailed instructions as well as "no" ability to understand, remember and carry out complex instructions. (Tr. 266-267). The mental factors presented to Ellis were essentially consistent with these limitations. The question was also compatible with the mental limitations identified by Psychologist Suzanne O'Koon, a non-examining medical advisor, who reviewed the record and responded to interrogatories from the ALJ. (Tr. 340). These reports offset the opinions of the aforementioned Moore as well as that of Psychologist Robert Spangler, another examiner. (Tr. 328-329). Therefore, substantial evidence now supports this portion of the administrative decision.

Napier argues that the ALJ again erred in evaluating her mental condition. The ALJ indicated he was going to remove the report of Dr. Robert Dane from the record as a result of questions about the doctor's license. (Tr. 381). However, it remained in the transcript (Tr. 285-291) and was considered by O'Koon (Tr. 338), thereby tainting her opinion. The Court notes that the mental limitations reported by Dr. Dane were very severe. (Tr. 289-290). It would appear to the undersigned that the plaintiff could only have benefited from having them considered by the medical advisor. Even if O'Koon's opinion could be considered to have been impermissibly tainted by consideration of Dr. Dane's report, the administrative decision was still well-supported by Maryman's findings. Therefore, any error is harmless.

With regard to the framing of the physical factors of the hypothetical

7

question, the undersigned can find no error. Dr. Rita Ratliff, an examining consultant, found "no physical evidence for significant restriction in the patient's tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or traveling." (Tr. 133). The extensive physical restrictions of the hypothetical question are clearly consistent with this opinion. No treating or examining source, including the staff at Appalachian Regional Healthcare (Tr. 108-122, 136-154) and the staff at the Clover Fork Clinic (Tr. 123-127), reported the existence of more severe physical limitations than those found by the ALJ. Therefore, the ALJ dealt properly with the evidence of record relating to Napier's physical condition.

Napier asserts that the ALJ erred in the finding that her work as an assembler and baby-sitter constituted "past relevant work." She notes that the assembler position was held for only three to six months as was her baby-sitting position.[2] The baby-sitting work was also only a part-time position. However, the administrative regulations indicate that a job only needs to be held during the past 15 years, constituted substantial gainful activity, and held long enough for a person to learn the job to be considered "past relevant work." 20 C.F.R. Section 416.960(b)(1). The administrative regulations also provide that part-time work can be considered substantial gainful activity. 20 C.F.R. Section 416.972(a). The plaintiff has cited no authority that the three to six month time periods these

---

[2]The plaintiff's description of the length of time the jobs were held varied. For example, she apparently told Moore in 1996 that the factory position, held three years earlier, had been held for five months. (Tr. 155). However, much later, she told another examiner that she thought it had been for four months. (Tr. 324). In a Work Background Report, she appeared to indicate that this job had been held for more than six months. (Tr. 275). Since it was the claimant's burden of proof on the past work issue, she could have produced other evidence, such as an earnings statement or tax returns to buttress her claim.

8

jobs were held would not be sufficient for her to learn them. These time periods appear sufficient to the Court. Therefore, the undersigned must reject the claimant's argument.

Napier has also raised issues concerning whether she could perform the alternative jobs cited by Ellis. Since she was properly found to be able to return to past relevant work, the undersigned has no need to reach these issues.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the  /3  day July, 2005.

G. WIX UNTHANK
SENIOR JUDGE